## Whitney *versus* Shippen et al., Ex'rs.

1. Where in an assignment of a lease by the lessee he is held in express terms to all the covenants in the lease, he is not a competent witness in an action for a breach of one of the covenants brought by the executors of his deceased lessor, against his assignee.

2. G. leased certain premises known as Gray's Brewery, to M., the lease containing the following conditions: " Should the lessee make any alterations or improvements of the said premises or appurtenances demised, the same are not to be removed by him, but shall belong and be surrendered to the lessor at the end of the term." M. introduced new machinery at considerable expense, and subsequently assigned the lease to W. At the end of the term W. removed certain portions of the new machinery, when the executors of G. brought an action upon the above covenant. W. offered testimony to show that at the time M. assigned the lease to W. there was a parol agreement to which G. was a party, that W. would purchase the new machinery, of which the articles in question were a part, for a fixed sum on condition that he could remove it at the end of his term. The court overruled the offer, on the ground that it contradicted, or altered the terms of the lease. *Held*, that this was error, and the evidence should have been admitted.

January 24th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1878, No. 87.

Covenant by Edward Shippen and J. L. Harmer, executors of the will of Robert E. Gray, deceased, against Elisha D. Whitney. The material facts will be found in the opinion of this court.

At the trial, before Peirce, J., the defendant made the following offers of testimony, all of which the court overruled:

1. To prove, by Thomas J. Martin, that the brewery premises were surrendered by Whitney, the defendant, in much better repair at the end of the lease than they were when leased by Gray to Martin.

2. To prove, by the same witness, an agreement between the lessor, Gray, and Whitney, made on or about the 29th of November 1867, that said Whitney should be the owner of and might remove, at the end of the lease, all the articles which he did remove from the brewery premises.

3. To prove, by Edward B. Schnider, that a certain paper, then and there produced and identified by the witness, dated November 13th 1867, was an inventory of the property at that time on the brewery premises; that the articles therein mentioned belonged to Thomas J. Martin, and that they were sold by him to Mr. Whitney, the defendant, between the 13th and 29th day of November 1867, with the consent of Gray, the lessor.

4. To prove by the same witness, that in the month of November 1867, Martin, the lessee, with the consent of Gray, the lessor, offered to sell to Whitney his unexpired term in the brewery, and certain articles of property therein contained, excluding those mentioned in the lease, but including those removed by Whitney, and

claimed for in this suit for $25,000; that Whitney informed Gray that he was willing to purchase said articles at that price if he could remove them at the end of the term, and that Gray agreed with Whitney that if he bought the articles from Martin and took an assignment of the lease, said articles should be his property, and he should have the right to remove them at the end of the term, and that Whitney, thereupon and by reason of said agreement, purchased said articles from Martin, and paid him $25,000 for them, and took an assignment of the lease, dated November 29th 1867, the said Gray being a party to said assignment also.

In the general charge the court, inter alia, said :

" By the lease in this case it is stipulated in paragraphs 3 and 4 as follows : ' 3. The lessee for himself, his heirs, executors, administrators and assigns, covenants and agrees with the lessor, his heirs, executors, administrators and assigns, that he will pay the said yearly rent in equal monthly portions as aforesaid, when and as the same accrues and becomes payable. That he will do all requisite or necessary repairs to the said premises and appurtenances, including the machinery, &c., at any time upon the premises, at his own proper cost and charges, and that in like manner he will pay all expenses incurred by reason of the said brewing business, and at the expiration of the term will deliver up peaceable possession of the said premises and appurtenances to the lessor in good tenantable condition for use as a brewery, reasonable wear and tear excepted.'

" ' 4. Should the lessee make any alterations or improvements of the said premises and appurtenances demised, the same are not to be removed by him, but shall belong and be surrendered to the lessor at the end of the term.'

" The object of these clauses of the lease appears to me to be that, as the premises were let as a brewery they should remain as such. I take these clauses to mean that if any alterations were made by the tenant they should be left on the premises; and I instruct you that the meaning of these clauses is, if there were any alterations or substitutions of machinery made they were to be left by the tenant."

The verdict was for the plaintiffs for $1666.52. The defendant took this writ, the errors assigned being first, second, third and fourth, the overruling the foregoing offers of testimony respectively, and fifth, the portions of the charge noted.

*W. S. Price*, for plaintiff in error.—The testimony of Schnider was overruled upon the assumption that it contradicted the terms of the lease. This rule applies only to parties to the instrument or their representatives claiming for or under them, but not to strangers to the instrument: Krider *v.* Lafferty, 1 Whart. 303; Commonwealth *v.* Contner, 9 Harris 272. If Whitney purchased from

Martin with the consent and under the agreement with Gray, either immediately before he became a party to the assignment of the lease, or with a view to taking such an assignment, then his undertaking in the assignment " to assume and perform all the covenants in the said lease to be by T. J. Martin done and performed," should be construed in the light of what had so recently taken place between Gray and himself, upon the faith of which he had paid a large sum of money. Moreover, it is in the power of the court to reform that provision in the assignment, if necessary, and it be not according to the terms of the agreement of Gray in the course of a transaction in which the assignment of the lease formed but a part.

*George Junkin*, for defendants in error.—Martin was incompetent as a witness: McFerren *v.* Iron Co., 26 P. F. Smith 188; Karns *v.* Tanner, 16 Id. 297; Taylor *v.* Kelly, 30 Id. 95; Arthurs *v.* King, 3 Norris 530; Hanna *v.* Wray, 27 P. F. Smith 27.

The offer by Schnider was to show negotiations for the lease and a previous parol agreement diametrically opposite to that in the lease and assignment.

The tenant stripped the brewery of the improvements he had made, and left it in such a condition that the business of brewing could not be conducted therein.

Mr. Justice GORDON delivered the opinion of the court, February 10th 1879.

Robert E. Gray, in his own right, and as trustee for his sister, Elizabeth White, in his lifetime, leased certain premises in the city of Philadelphia, known as Gray's Brewery, for the term of seven years, commencing March 1st 1866, to Thomas J. Martin. In this lease was the following stipulation: " Should the lessee make any alterations or improvements of the said premises or appurtenances demised, the same are not to be removed by him, but shall belong and be surrendered to the lessor at the end of the term." At the time Martin took possession of the property, there were upon it a steam-engine and boiler and such fixtures and utensils as were necessary for the purposes of a brewery. He, however, for his own purposes, introduced certain new machinery, worth, it is said, some $40,000, without, however, disturbing any of the old fixtures, except certain coppers, which were removed with the assent of the lessor.

So matters remained until the 29th of November 1867, when this lease, by a writing under seal, was assigned to the defendant Whitney, he taking upon himself the covenants of the original lease.

Now, among other breaches of his covenants, that have been charged against the defendant, is this, that he did, at the conclusion of his tenancy, remove and take away from the premises cer-

[Whitney *v.* Shippen.]

tain fixtures and appurtenances thereunto belonging, to wit: one false bottom and crib for mash-tub, five copper temperators, one Gifford injector, one mercury steam-guage and three guage-cocks, altogether of the value of $3000, and converted and disposed of the same to his own use, knowing the said fixtures to be the property of the plaintiffs, and of right to appertain and belong to the demised premises. To meet this charge the defendant made certain offers of proof, to be sustained by the testimony of a disinterested witness, Edward B. Schnider, to the effect following: "that in the month of November 1867, Thomas J. Martin, the lessee, with the consent of Robert E. Gray, the lessor, offered to sell to E. D. Whitney his unexpired term in the brewery, and certain articles of property therein contained, excluding those mentioned in the lease, but including those removed by Mr. Whitney, and claimed for in this suit, for $25,000; that Whitney informed Gray that he was willing to purchase said articles at that price if he could remove them at the end of the term, and that Gray agreed with Whitney that if he bought the articles from Martin and took an assignment of the lease, said articles should be his property and he should have the right to remove them at the end of the term; and that Whitney thereupon, and by reason of said agreement, purchased said articles from Martin and paid him $25,000 for them, and took an assignment of the lease, dated November 29th 1867, the said Gray being a party to said assignment also." The learned judge of the court below overruled this offer, for the reason, as we understand it, that it tended to contradict or alter the terms of the lease, and the parol negotiations, recited in the offer, not occurring at the very time of the execution of the assignment, could not be used for the purpose proposed. As a general proposition the rule stated in the above deliverance might be regarded as sound, but as applied to the present case we think it fails for want of applicability. For the purposes of this argument we must take the offer as proved, and so it comes to just this, that Whitney bought and paid for certain property which both Martin and Gray agreed to treat as personal. Martin wished to sell, Whitney was willing to buy, but in order to settle any question as to Martin's right, to be relieved of all doubt or controversy about whether these articles were to be considered fixtures or not, he applies to the lessor himself, and is by him assured that if he purchases this property from Martin, and takes an assignment of the lease the articles thus purchased should be his property and he should have the right to remove them at the end of the term. In pursuance of this agreement Whitney did purchase the property, did take an assignment of the lease, and so, in consideration thereof, became Gray's tenant. Thus it was that, so far as concerned this transaction, the assignment itself was but part of a parol contract, and, but as such, it would never have had an existence. The parties themselves, wisely, in this manner intended to settle

[Whitney *v*. Shippen.]

all disputes as to the status and character of this property. Martin proposed to sell it as his own personalty; Gray agreed he should do so and Whitney under this arrangement bought. This, when closed up, was the end of that transaction; when Whitney paid Martin and executed the assignment, the articles in controversy, if so be that they were included in the sale, passed to the defendant as his own personal property; Martin had so agreed, and Gray had so agreed, and as there was no one else to object that was the end of the matter. Thus it is that the parol contract does in no way tend to affect or modify the assignment, for, as we have already said, the assignment was part of that contract. But suppose it were a question whether the articles in controversy were covered by the words "alterations and improvements" as found in the lease, this question after all is one of fact, not of law, and who so competent to pass upon it as the parties themselves? And they having passed upon and settled the matter, and having acted upon their own settlement in good faith, good faith requires that it should remain undisturbed. Whitney covenanted *not to remove any "improvements or alterations"* which he might make upon the premises, and there is no complaint that in this he violated his covenant; the head and front of his offending is that when he quit the brewery he took with him property which he bought as personal property and which Gray agreed he should remove when the lease expired.

This, in effect, sustains the defendant's third, fourth and fifth assignments of error: the first and second are not sustained.

The assignment, in express terms, holds Martin to his covenants in the lease, and the lessor being dead, he, Martin, cannot be permitted to testify.

Judgment reversed, and a *venire facias de novo* awarded.